18900

J. D. SMITH, Sr., as Administrator of the Estate of J. D. Smith, Jr., Appellant, v. Maxine A. Salisbury WINNINGHAM, Respondent

(166 S. E. (2d) 825)

*Messrs. James P. Harrelson,* of Walterboro, *James E. Hunter* of West Columbia, and *Lever & Duncan* of Lexington, *for Appellant,*

464

*Messrs. Grimball & Cabaniss,* of Charleston, and *Walker, Walker & Jenkins,* of Summerville, *for Respondent,*

April 7, 1969

Moss, Chief Justice.

This action was instituted by J. D. Smith, Sr., as administrator of the estate of J. D. Smith, Jr., deceased, the appellant herein, against Maxine A. Salisbury Winningham, the respondent herein, to recover damages for the wrongful death of J. D. Smith, Jr. The action was brought pursuant to Section 10-1951 et seq., 1962 Code of Laws of South Carolina, for the benefit of the parents of the intestate.

J. D. Smith, Jr. came to his death on July 12, 1964, as a result of being struck and run over by an automobile operated by the respondent. It is alleged that his death was due to and proximately caused by the negligence, carelessness, willfulness and wantonness of the respondent. The answer of the respondent was a general denial and that the death of J. D. Smith, Jr. was the proximate result of the contributory negligence and willfulness of the parents, the intestate being a child of tender years, in permitting him to play without proper and adequate supervision on or near a roadway where there was a likelihood of imminent danger to a child.

The case came on for trial before The Honorable E. Harry Agnew, Presiding Judge, and a jury, at the 1968 April term of the Court of Common Pleas for Dorchester County, and resulted in a verdict, by the jury, in favor of the respondent. The appellant unsuccessfully moved for a new trial upon the grounds hereinafter stated. It is from this order that this appeal is prosecuted.

The appellant asserts that on July 12, 1964, at approximately 2:00 P.M., that J. D. Smith, Jr., a child six years of age, was playing in the children's wading pool of the Water Wheel Recreation Center in Dorchester County; that he left the said pool and while attempting to cross a dirt road separating the wading pool from the picnic area of the recreation center, he was struck and run over by the automobile driven by the respondent, his death resulting from the injuries sustained.

It appears from the record that the dirt road separating the wading pool from the picnic area, and on which the respondent was driving her automobile, was approximately 12 feet in width. As the respondent was driving on this dirt road, the pool area was to her left and 6 feet from the edge of the road, and to her right was the parking and picnic area with trees and underbrush adjacent to the road.

The respondent testified that she was driving her car at a speed of about five miles per hour on the right-hand side of the road and that she was looking in the direction in which she was driving. She stated that she did not see the child, or any other children, in or near the road. She stated that something hit her car and she felt the bump and stopped the car within a few feet. She said she saw the child for the first time after the impact when he was over on the left side of the road going towards a tree. It was at that point the child collapsed.

The appellant called as a witness Mrs. Pansy Reeves Prell. She stated that she arrived several minutes after the accident occurred and saw the child's body lying on the edge of the road by the men's locker room near the pool. She testified that she could see water marks from where his feet had been "drugged" on the road and other water marks "in the dirt where it had been dripping and where his body was and where he was when I saw it." The record then shows the following:

"Q. Did the drippings come from any direction?

"Mr. Cabaniss: Your Honor, I think she would have to testify what made the drippings. The ones around the body but I think that that would be a conclusion that they would come from the child. Unless she saw them made, saw any other marks made on the roadway, that would be speculation.

"Mr. Lever: She said they led up to the body.

"The Court: Well, unless she saw the drippings made or unless she knows of her own knowledge that they were made by the deceased body, I could not permit her to answer that question.

"By Mr. Hunter:

"Q. Mrs. Prell, was the ground dry on the road?

"A. Yes, sir.

"Q. Was there any evidence of any water on the road?

"A. Well, you could see the water from the bare feet on the ground where his feet were drugged on the road there was water.

"Q. Was it puddle or in drops?

"A. It was drops.

"Q. Drops disbursed about?

"A. Drops along the road.

"Q. Did they point in any direction?

"Mr. Cabaniss: Your Honor, again I object. I don't think she could state that. I think she could describe what she saw.

"The Court: Descrbe what you saw. That is as far as she could go.

"By Mr. Hunter:

"Q. Mrs. Prell, what did the water drippings on the dry road look like?

"A. Well, just water spots where, you see his feet were drugged and when the body had landed, there was water all around that."

It is the posiiton of the appellant that the trial judge was in error in refusing to allow the witness, Mrs. Pansy Reeves Prell, to testify whether or not the water drippings

near the deceased's body came from or pointed in any direction.

Assuming, without deciding, that the trial judge ■ was in error in sustaining the objection made to the question "Did the drippings come from any direction?", we think such error was harmless, in view of the other evidence subsequently submitted and hereinafter quoted. Alleged error in the exclusion of offered testimony is of no avail if the same testimony or testimony to the same effect had been or was afterwards allowed to be given by the witness. *Strickland v. Phillips,* 75 S. C. 264, 55 S. E. 453; *Robertson v. Fraternal Union of America,* 85 S. C. 221, 67 S. E. 247; *McCown v. Muldrow,* 91 S. C. 523, 74 S. E. 386; *Leonard v. Atkinson,* 133 S. C. 249, 130 S. E. 755; *Crouch v. Cudd,* 158 S. C. 1, 155 S. E. 136; *La Count v. General Asbestos & Rubber Company,* 184 S. C. 232, 192 S. E. 262; and *Nelson v. Coleman Company,* 249 S. C. 652, 155 S. E. (2d) 917.

The following testimony is substantially the same as that objected to and excluded and was elicited from the same witness on both cross and direct examination. We quote the following from the record:

"Q. Where were the water marks that you say you saw in the road? You may if you want to get up and show us.

"A. (The witness walks to the blackboard.) This is the swimming pool. Some steps right in here and that right there is where I saw the water marks. Here is where his feet were drugged. (Indicating on blackboard.)

"Q. And you saw water back there on the road?

"A. Yes, sir.

"Q. Now, were there any other water marks on the roadway other than the ones you saw there?

"A. Not on the road but on the side. There is always water splashed on the cement.

"Q. Well, don't people walk back and forth across the roadway?

"A. Yes, sir, but where his feet were dragged, there was more water than if you were walking across it was just dripping, when it was just dripping, it would not be that much.

"Q. So this was more water at that point?

"A. Right.

"Q. And that is the only mark that you saw. Apparently he was the only one who walked across there with wet feet?

"A. No, not really but you could tell somebody, feet had been dragged for five or six feet."

\* \* \* \* \* \*

"Q. And you found the water marks out there? (indicating.)

"A. Yes, sir."

\* \* \* \* \* \*

"Q. Mrs. Prell, this dot, is that a fair representation of the proximity to each edge of the road where the water drippings were?

"A. Would you repeat that, please?

"Q. This dot you said was the water drippings?

"A. Yes, sir. The road is not that far from the building. They got a big gap between the swimming pool and road which is not there.

"Q. I am talking about right here from each edge of the road. I am asking you if this dot represent a fair estimate of where the water was in proximity to each edge of the road?

A. Yes, sir.

"Q. Where was the body in relation to the water drippings?

"A. It was by the tree.

"Q. And that would be—would you come down and put it? (The witness marks on blackboard.)

"A. It would be right here on the edge of the road by the tree."

It is apparent from the testimony hereinabove quoted that the witness testified as to any water drippings and markings on the roadway, of which she had knowledge, indicated their location on a sketch drawn on a blackboard.

We think, conceding error on the part of the trial judge in sustaining the objections referred to above such was cured by the subsequent admission of other evidence which establishes the fact to which the excluded evidence related. The exception posing this question is overruled.

The trial judge, in his main charge, instructed the jury as follows:

"Now, in regard to the motorist and the duty to children, I charge you that the operator of a motor vehicle who knows by the exercise of reasonable care should know that children are at play in the vicinity of his vehicle owes the duty of exercising proper care and precaution to avoid injury to them. If you find that the defendant knew or reasonably should have known of the presence of the child in the vicinity of the vehicle, then the test of his compliance with his duty is whether or not on the occasion in question he exercised that degree of care which should have been exercised by a man of ordinary reason and prudence under the same or similar circumstances."

At the request of the respondent, the trial judge further instructed the jury that:

"In the absence of notice of the presence of children in or near the roadway, a motorist proceeding with due regard to the law of the road and the regulations governing the operation of his vehicle should not be liable for injuries received by a child who entered the highway so suddenly that they could not stop or otherwise avoid injuring him."

The appellant admits that the requested charge was a correct statement of the law. *Herring v. Boyd,* 245 S. C. 284, 140 S. E. (2d) 246. However, he did object, pursuant to Section 10-1210 of the Code, on the ground that the

testimony revealed the respondent had notice of children playing in and about the premises and the charge was, therefore, not applicable to any issue to be submitted to the jury.

■ We have held that the portions of a charge complained of as being erroneous must be considered in context with the rest of the charge on the same question. In other words, a charge must be considered as a whole. *South Carolina Elec. & Gas Co. v. Aetna Ins. Co.,* 238 S. C. 248, 120 S. E. (2d) 111.

The appellant contends that by the foregoing charge, to which he objected, the trial judge indicated to the jury that the respondent had no notice of children in the area of the pool. We do not think that the charge is subject to this construction. Even though the respondent admitted that she knew children frequented the Water Wheel Recreation Center, she testified that on the occasion in question she did not see any children in the road or alongside the road as she drove in the area. Under the facts and circumstances here, it was for the jury to say whether the standard of due care had been reached with respect to children in the area.

■■ The charge of the trial judge in this case was not erroneous in any respect and we find no prejudice to the appellant that calls for a reversal of the judgment below. The burden was on the appellant to show that the charge as given was prejudical to him. *Ellison v. Simmons,* 238 S. C. 364, 120 S. E. (2d) 209. The appellant has not sustained the burden of showing prejudical error in the charge.

The exceptions of the appellant are overruled and the judgment below is,

Affirmed.

LEWIS, BUSSEY, BRAILSFORD and LITTLEJOHN, JJ., concur.