1200

Charles P. MAINS, Respondent v. K MART CORPORATION, Appellant.
(375 S. E. (2d) 311)

Court of Appeals

*Stephen E. Darling* and *Thomas C. Hildebrand, Jr., Sinkler & Boyd,* Charleston, *for appellant.*

*Jerry N. Theos, Uricchio, Howe, Krell, Jacobson & Toporek,* Charleston, and *Thomas O. Berry, Jr.,* St. George, *for respondent.*

Heard May 23, 1988.

Decided Dec. 1, 1988.

GARDNER, Judge:

Charles P. Mains (Mains) sued K Mart Corporation (K Mart) for slander. Following a jury trial, a verdict for actual and punitive damages was awarded Mains; K Mart appeals. We affirm.

By way of background, on December 21, 1985, Mains and his wife purchased several things at the K Mart Store in Ladson, S. C. That day Mains was wearing a jacket which his

wife had previously purchased for him at another K Mart store; Mains had never worn it before and had inadvertently left a straight pin in the tail of the jacket. Among the purchases the Mains made on December 21, 1985, was a jacket, which was identical, except in color, to the jacket Mains was wearing.

While they were purchasing the new jacket, Mrs. Mains noticed that Mains had not buttoned the sleeves of his own jacket and she fastened them; she testified that what she did was simply an act of affection (akin, we think from her testimony, to a wife straightening her husband's tie).

A K Mart employee, Mr. Argus, observed that Mains' jacket was pinned like the jackets on display in the store and then observed Mrs. Mains buttoning the sleeves. Argus reported his observation to Smith, a security employee of K Mart. Smith and Liner, K Mart's security manager, watched as Mr. and Mrs. Mains went through check out, and ostensibly concluded that Mains did not pay for the jacket he was wearing. Smith and Liner then stopped Mains in the vestibule as they were leaving the store and questioned him about the jacket he was wearing and the straight pin in the tail. According to Mr. and Mrs. Mains, Smith and Liner demanded an explanation about the pin.

From Mr. and Mrs. Mains' testimony it appears that the discussion in the vestibule and back inside of the store near the service desk lasted about twenty minutes or so. Everyone admitted that the talking grew loud at some point during the discussion. Mr. and Mrs. Mains both testified that before things became loud they attempted to explain the jacket had been previously purchased, they had overlooked the pin in the tail, and someone in the men's department could clear up the matter. Mrs. Mains testified that Argus got a jacket like the one Mains was wearing and "was shaking it at our face, just screaming, this is like the shirt you have on now. You see the pin in here. This is like the one you've got on now." Finally, Argus directed two fellow employees to take Mains to the back of the store *while he got the police*. Mrs. Mains testified she became hysterical at that point. Finally, after further discussion at the back of the store, Mr. and Mrs. Mains were told they could leave.

We address the questions presented seriatim.

First, K Mart urges that the trial judge erred in denying its motion for directed verdict and judgment n.o.v.

At the close of its case K Mart made a motion for directed verdict (formerly a nonsuit) on the grounds (1) that K Mart had reasonable grounds to stop and question Mains and (2) that Mains' slander action must fail because he admitted that there was no direct accusation that he was shoplifting.

At the close of the testimony, the record before us reflects no motion by K Mart's attorney. The record does reflect this:

> THE COURT: Note the usual motions and mark them heard. Y'all go ahead and get arguments before lunch. To [sic] ahead.

We hold that if K Mart intended to make a motion for directed verdict at the close of the case, it was incumbent upon its attorneys to either insist on stating the grounds for the record or handing motions in writing to opposing counsel and the trial judge for his decision. A trial lawyer must, with all deference to the court, preserve his client's position in order to lay a foundation for appeal; to this extent an attorney is required to be assertive. For example, no authority is required for the proposition that an attorney must, after moving that the jury be excused, proffer for the record testimony to which an objection has been sustained. While we find no South Carolina decisions directly on point as to our holding on this point, we do call attention to the case of *Union Bleachery v. United States,* 79 F. (2d) 549 (4th Cir. 1935), which arose in South Carolina. There, as to certain exceptions to the record, the trial judge stated, "all rights will be thoroughly protected for appeal. I will allow an exception in the event the ruling is adverse to either side." 79 F. (2d) at 550. Judge Parker, speaking for the Fourth Circuit Court of Appeals, held:

> It is well settled, of course, that the findings of the trial judge in a case such as this have the effect of the verdict of a jury, and that even where properly excepted to, they will not be disturbed if supported by any substantial evidence. It is equally well settled that we will not review the findings of fact to ascertain whether they are supported by substantial evidence, or pass upon questions of law not apparent upon the face of the

primary record, unless the attention of the court below has been directly drawn thereto and the right of review has been preserved by exceptions duly and seasonably entered. [Citations omitted.]

79 F. (2d) at 550.

The court went on to hold that the mere statement of the trial judge that all rights on appeal would be protected and that he would allow an exception in the event the ruling should be adverse to either side, did not obviate the necessity of entering specific objections to such rulings and findings as were objected to.

We therefore hold that no rights were preserved by K Mart insofar as it made no formal motion for a directed verdict at the close of the case. We will, however, address the issue presented by the motion for a directed verdict at the close of the plaintiff's case.

K Mart contends that Mains does not allege innuendo; as one of the grounds for K Mart's post-verdict motion for judgment n.o.v. it contends that Mains failed both to plead and prove slander by innuendo.

K Mart misunderstands the law of innuendo, and we fear that this misunderstanding is pervasive among the Bar.

■ Innuendo, as used in the law, is a pleading term; it is that part of a complaint in an action for libel or slander which explains the expressions alleged to be libelous or slanderous. Literally, an innuendo, in the legal sense means, "that is to say." *Webster's New Twentieth Century Dictionary* 946 (2d ed. 1968). It is equivalent to the phrase *id est. Atchley v. State*, 56 Tex. Cr. R. 569, 120 S. W. 1010 (1909).

Our Supreme Court in the case of *Culler v. Great Atlantic & Pacific Tea Co.*, 183 S. C. 352, 191 S. E. 67 (1937) describes innuendo thusly:

The following definition of the innuendo is given in Newell on Libel and Slander at page 588: "An Innuendo in pleading is an explanation of the defendant's meaning by reference to some antecedent matter * * * but it cannot add or enlarge, extend or change the sense of the previous words, and the matter to which it alludes must always appear from the antecedent parts of the plead-

ing. *It is necessary only when the intent may be mistaken or where it cannot be collected from the defamatory matter itself.* It is a statement by the plaintiff of the construction which he puts upon the words himself, and which he will endeavor to induce the jury to adopt at the trial." [Emphasis ours.]

183 S. C. at 356, 191 S. E. at 69.

Mains' complaint alleged no innuendo; the allegations are simple assertions that K Mart wrongly accused him of attempting to take merchandise without paying for it and of being a shoplifter and a thief.

Although K Mart's answer contained an allegation to the effect that Mains' complaint failed to state a cause of action, it did not allege any grounds or specifications of the deficiency. Furthermore, this allegation in K Mart's answer about Mains' complaint, formerly required to be pleaded by demurrer, was never argued or brought to the attention of the court either before or during the trial of the case. It was incumbent on K Mart to pursue a ruling on this allegation. *Holston v. Jackson,* 278 S. C. 137, 292 S. E. (2d) 794 (1982). The trial judge was not given an opportunity to pass on this issue and it cannot be raised for the first time on appeal. And we so hold. *Talley v. South Carolina Higher Education Tuition Grants Committee,* 289 S. C. 483, 347 S. E. (2d) 99 (1986).

K Mart urges that the case of *Drakeford v. Dixie Home Stores,* 233 S. C. 519, 105 S. E. (2d) 711 (1958) holds that where the proof of a case is by the implication of words rather than an actual accusation, that the alleged innuendo must be pled in the complaint. *Drakeford* does not stand for this proposition; it simply stands for the proposition that the innuendo alleged by the plaintiff in that case, taken at face value, did not constitute an allegation of slander.

Mains' complaint, as noted before, alleged that K Mart wrongfully accused him of attempting to take merchandise from the store without paying for it. We hold that this allegation of fact is sufficient in itself to allege slander per se, especially when synthesized with the allegation that K Mart accused Mains of being a shoplifter and a thief. Mains' allegation to the effect that he was wrongfully accused by K Mart of attempting to take mer-

chandise from its store without paying for its paramount to an accusation that he was a shoplifter and a thief and that allegation is an allegation of slander per se; therefore, the pleading of innuendo was not necessary to Mains' case.

We now turn to the issue of proof at the trial and to ▮ whether there was sufficient evidence to constitute proof of the allegation of slander. There is testimony of record from which we hold that the jury could have found that by either the words used or a combination of the words and conduct of K Mart's employees it was communicated at least to Mrs. Mains that K Mart accused Mains of shoplifting. Words or conduct or the combination of words and conduct can communicate defamation. And we so hold. *Tyler v. Macks Stores of South Carolina, Inc.*, 275 S. C. 456, 272 S. E. (2d) 633 (1980).

Mrs. Mains testified that she told K Mart employees, "if somebody saw [Mains] . . . steal that shirt, then lock him up." Further, she testified that Argus then said, "bring him to the back, I am calling the police." Mains was then escorted by two K Mart employees, one to the side of him and the other behind him, to the back of the store. Mrs. Mains then testified, "I realized they actually thought he stole the shirt. I said to myself, 'my God they are going to lock him up.' " A wife is a third person and to communicate to her defamatory words about her husband is sufficient publication to satisfy the law of slander. A publication of a libelous message to a wife is calculated to do as much, if not more, damage than publication to another. *Lesesne v. Willingham*, 83 F. Supp. 918 (E. D. S. C. 1949); M. Newell, *The Law of Slander and Libel in Civil and Criminal Cases* Section 183 (4th ed. 1924).

For the above reasons we reject K Mart's contention that innuendo must be pleaded and proved.

We turn to the next question of merit, i.e., whether Mains proved actual malice. K Mart argues its communications were qualified and therefore privileged, so that Mains was required to prove actual, express malice to prevail on the slander cause of action. *Fulton v. Atlantic Coast Line R. Co.*, 220 S. C. 287, 67 S. E. (2d) 425 (1951) is on point; we quote:

> That the appellant believed the charges to be true did not justify it publishing them in an improper and un-justified manner. . . . Proof that they were published in

such manner ... would constitute sufficient proof of malice, or malice in fact. It is not necessary that evidence must be offered of malignity or ill will, nor that those facts should be found. The time, place and other circumstances of the publication of defamatory charges, as well as the language of the publication itself, are admissible as evidence to show that the false charge was made with malice. It is generally held that the protection of a qualified privilege may be lost by the manner of its exercise, although belief of the truth of the charge exists. The privilege does not protect any unnecessary defamation. In order for a communication to be privileged, the person making it must be careful to go no further than his interests or his duties require. Where the person exceeds his privilege and the communication goes beyond what the occasion demands that he should publish, and is unnecessarily defamatory of plaintiff, he will not be protected. And the fact that a duty, a common interest, or a confidential relationship existed to a limited degree, is not a defense, even though he acted in good faith. [Citations omitted.]

220 S. C. at 296-297, 67 S. E. (2d) at 429.

A publication loses its character as privileged and is actionable if there is such gross disregard of the rights of the person injured to amount to malice in fact. *Cf. Padgett v. Sun News*, 278 S. C. 26, 292 S. E. (2d) 30 (1982) (in defamation action, "actual malice" can mean the defendant acted recklessly or wantonly, i.e., with conscious disregard of plaintiff's rights, which requires that the defendant be chargeable with consciousness of his wrongdoing). It is ordinarily for the jury to determine whether or not the privilege has been abused or exceeded. *Woodward v. South Carolina Farm Bureau Insurance Co.*, 277 S. C. 29, 282 S. E. (2d) 599 (1981).

Since there is evidence of record from which the jury could have found K Mart employees exceeded the privilege in the manner that they exercised it, the trial court's refusal to direct a verdict based upon the privilege was not error. And we so hold.

K Mart next argues that Section 16-13-140, Code of Laws of South Carolina (1976) permits it to take

reasonable steps to protect itself from shoplifting, and what its employees did was reasonably necessary. Section 16-13-14 provides:

> In any action brought by reason of having been delayed by a merchant or merchant's employee or agent on or near the premises of a mercantile establishment for the purpose of investigation concerning the ownership of any merchandise, it shall be a defense to such action if: (1) The person was delayed in a reasonable manner and for a reasonable time to permit such investigation, and (2) reasonable cause existed to believe that the person delayed had committed the crime of shoplifting.

Whether Mains was delayed in a reasonable manner and for a reasonable time to permit investigation, under the circumstances of this case, was an issue for the jury; so also was the question of whether there was reasonable cause to believe that Mains committed the crime of shoplifting. And we so hold.

Section 16-13-140 is, in reality, the same as and not in conflict with the common law principles discussed above, as it affords the defense to actions arising out of the detention of a customer for investigation of suspected shoplifting only where such detention and investigation are conducted in a reasonable manner. What is reasonable is ordinarily a question of fact for the jury and under the circumstances of this case was a question of fact for the jury and we so hold.

We find no merit in the other questions presented on appeal by K Mart.

For the above reasons, the judgment below is affirmed.

Affirmed.

CURETON and GOOLSBY, JJ., concur.