488 S.E.2d 314

**James K. BABER, Respondent/Appellant,**

v.

**GREENVILLE COUNTY, South Carolina, Greenville County Council, W. Mann Batson, Paul H. Greer, James L. "Skip" Goldsmith, Dick Herdklotz, Robert W. Leach, Paul B. Wickensimer, Ennis M. Fant, Gale B. Crawford, E.D. Dixon, James B. Arrowood, George E. Bomar, and W.B. Bennett, in their official capacities, and J. Nathan Morgan, in his official capacity, Appellants/Respondents.**

No. 24652.

Supreme Court of South Carolina.

Heard Dec. 8, 1994.
Decided July 21, 1997.

34

Glenn R. Goodwin, of Ogletree, Deakins, Nash, Smoak & Stewart, Greenville, and Michael S. Thwaites, Greer, for Appellants/Respondents.

Herman E. Cox and Rodney F. Pillsbury, of Law Offices of Herman E. Cox; William A. Jordan, of Nelson & Jordan, Greenville, for Respondent/Appellant.

TOAL, Justice:

Both parties appeal the jury verdict in favor of James K. Baber in his Whistleblower's action against Greenville County. We affirm.

## FACTUAL/PROCEDURAL BACKGROUND [1]

Greenville County named Baber interim Internal Auditor in August 1986. Thereafter, the County Administrator received an anonymous letter on the County Tax Collector's stationery accusing the County Tax Collector of waiving tax penalties for certain taxpayers. As a result of the anonymous letter, the County Administrator asked Baber to audit the County Tax Collector's office.

The audit lasted from May 1987 through at least November 1987. During the audit, Baber found that several large corporations and one member of County Council had paid taxes late. Baber determined that the County Tax Collector waived penalties for these late taxes. Baber prepared an audit report detailing the waived penalties. Several members of the Greenville County Council instructed Baber to delete the portion of the report that named the County Councilman who did not pay the penalty.[2] Baber refused.

The County Administrator orally notified Baber of his termination on January 19, 1988. The following day Baber received a letter of termination from the County Administrator stating that Baber's termination was effective at 5:00 p.m., January 20, 1988. In accordance with Greenville County Rules, Baber timely requested a public hearing. A hearing was held on March 15, 1988, and the County Council unanimously voted to terminate Baber. Shortly thereafter, Baber's attorney received a letter from the County Attorney, which provided in pertinent part:

> On Tuesday, March 15, 1988, Greenville County Council formally voted to affirm its decision to terminate James K. Baber. . . . Mr. Baber's personnel records have been amended to reflect a termination date of March 15, 1988, and the South Carolina Retirement System has been accordingly notified.

---

**1.** The facts set forth are true only for purpose of this opinion and are not intended to be determinative in other litigation involving the parties.

**2.** After Baber was terminated, the report was changed prior to being presented to County Council, leaving out the name of the County Councilman who did not pay a penalty for late taxes.

Additionally, Mr. Baber had previously paid Greenville County . . . the amount necessary to maintain his insurance benefits for the month of February. Since the effective date of his termination is March 15, 1988, the appropriate insurance deductions have been taken from the enclosed check to accurately reflect the length of Mr. Baber's employment with Greenville County.

Baber filed suit on January 23, 1990. Baber originally claimed ineffective discharge and violation of the Whistleblower's Act. He also demanded a mandamus requiring the Tax Collector to collect all penalties. The County answered and filed a motion for summary judgment on all causes of action. The circuit court granted the County summary judgment on the ineffective discharge claim.

Baber later amended his complaint to add a Section 1983 [3] cause of action and named the individual members of County Council as party defendants. Baber also added a wrongful discharge claim based upon public policy. At trial, the judge granted the County summary judgment on the Section 1983 cause of action and directed a verdict for the County on the wrongful discharge claim. The mandamus action was held in abeyance to be disposed of by the court at the conclusion of trial. Only the Whistleblower's action went to the jury. The jury returned a verdict in Baber's favor in the amount of $213,930. In a separate proceeding, the trial judge awarded attorneys' fees in the amount of $77,531. Finally, in another proceeding, the trial judge found the South Carolina Tax Commission was the appropriate forum for any mandamus action requiring the County to collect the delinquent penalties. Both parties appeal.

## LAW/ANALYSIS

### A. WHISTLEBLOWER'S ACTION

■ The County filed a motion for summary judgment asking the court to dismiss the Whistleblower's action as barred by the statute of limitations and as accruing prior to the effective date of the Whistleblower's Act. Judge Traxler denied County's motion holding that a question of fact existed

---

3. 42 U.S.C. § 1983.

as to the date of Baber's termination. At trial, after the presentation of all of the evidence, the trial judge, Judge Ervin, ruled as a matter of law that Baber was terminated on March 15, 1988, the day County Council voted to terminate Baber. We affirm.

█ A "Whistleblower's action" is a suit against a public employer wherein a public employee claims to have been subject to adverse personnel action in retaliation for having exposed governmental wrongdoing. South Carolina created such an action by a statute that became effective March 14, 1988. S.C.Code Ann. § 8–27–10 to 50 (1988), *amended by* S.C.Code Ann. § 8–27–10 to 50 (Supp.1996). Under the 1988 statute, a Whistleblower's action must be brought within two years after its accrual. S.C.Code Ann. § 8–27–30(D) (1988) (providing 2 year statute of limitations), *amended by* S.C.Code Ann. § 8–27–30(B)(Supp.1996) (providing 1 year statute of limitations). The resolution of this issue depends on whether Baber's cause of action arose on the date he was initially notified of County's proposal to terminate his employment or whether Baber's cause of action arose on March 15, 1988 when Council formally voted to affirm its decision to terminate Baber and to amend its records to reflect a termination date of March 15, 1988.

The Rules of the Greenville County Council set forth the procedure for termination of the Internal Auditor. The Rules provide that the Internal Auditor "shall serve at the pleasure of Council.... If the Council determines to remove the Internal Auditor, the procedure set forth in Section I C will apply to the position of Internal Auditor." Rules of the Greenville County Council, Section 1 E. Section I C addresses the employment of the County Administrator. The section reveals the following procedure for removal of the County Administrator (and, hence, the Internal Auditor):

If the Council determines to remove the County Administrator, he shall be given a written statement of the reasons alleged for the *proposed removal* and the right to a hearing thereon at a public meeting of the Council. Within five days after the notice of removal is delivered to the Administrator he may file with the Council a written request for a public hearing. This hearing shall be held at a Council

meeting not earlier than twenty days nor later than thirty days after the request is filed. The Administrator may file with the Council a written reply not later than five days before the hearing. *The removal shall be stayed pending the decision at the public hearing.*

Rules of the Greenville County Council, Section 1C (emphasis added). These Rules clearly indicate that the Internal Auditor shall be given a written statement of the reasons for the "proposed removal," after which the Auditor may request a public hearing. This is precisely what occurred in the present case as Baber was given a termination notice, after which he requested a public hearing. The Rules conclude by declaring that "The removal shall be stayed pending the decision at the public hearing." Thus, we find that Baber was not removed or terminated from office until the public hearing was held, and the Council rendered its decision on March 15, 1988. *Accord Drawdy v. Town of Port Royal,* 308 S.C. 462, 419 S.E.2d 215 (1992).

This is confirmed by County's own letter to Baber, which stated that on March 15, 1988 County Council "formally voted" to affirm Baber's termination. The Council further wrote that "Mr. Baber's personnel records have been amended to reflect a termination date of March 15, 1988, and the South Carolina Retirement System has been accordingly notified." In the same letter, they state, "Since the effective date of his termination is March 15, 1988, the appropriate insurance deductions have been taken from the enclosed check to accurately reflect the length of Mr. Baber's employment with Greenville County." Thus, Council's own correspondence clearly supports our conclusion that March 15, 1988 was Baber's termination date. Accordingly, the trial judge did not err in holding as a matter of law that this date constituted Baber's termination date.[4] As March 15th was after the

---

4. We recognize that *Belton v. State,* 313 S.C. 549, 443 S.E.2d 554 (1994) held the termination date of a government employee was an issue of fact when the employee was given a letter of termination and was subsequently notified of the final decision to terminate her employment. *Belton* is distinguishable because, unlike the present case, it did not involve a situation where there exists a statute or county rule requiring that removal be stayed pending the decision at a public hearing.

effective date of the Whistleblower's Act, Baber was entitled to pursue his cause of action under the Act.

■ We also disagree with the County's contention that Baber's action is barred by the statute of limitations. Baber's action accrued and the statute of limitations began to run on March 15, 1988 when the Council formally voted to remove Baber from office. Baber filed this action on January 23, 1990, within the two year period provided by the statute at that time. S.C.Code Ann. § 8–27–30(D)(1988).[5] We affirm.

■ We disagree with the County's contention that the trial judge overruled the prior order of Judge Traxler denying its motion for summary judgment by ruling Baber's action accrued on the date Baber was terminated by vote of County Council. The denial of summary judgment is interlocutory. *Geiger v. Carolina Pool Equip. Distrib., Inc.*, 257 S.C. 112, 184 S.E.2d 446 (1971). An interlocutory denial of summary judgment is not a final order and is subject to change by the trial court. *Cf.* 46 Am.Jur.2d, *Judgments* § 203 (1994). Thus, the trial judge retained jurisdiction to rule, after the presentation of the evidence, on the same issue previously the subject of a pre-trial summary judgment motion. We affirm.

## B. SCOPE OF COUNTY'S CROSS-EXAMINATION

■ Baber called as plaintiff's witnesses Walter Parham, the former County Attorney, and Mary Turner, the former County Council Clerk. On cross-examination, the County attempted to elicit testimony from both witnesses that the County criticized Baber's job performance. Baber objected on the ground of hearsay. The County argued the testimony was not hearsay as it was offered for the purpose of showing Baber had notice of his poor job performance. The trial judge sustained the objections.

■ The County contends the trial judge erred in excluding the testimony on the ground of hearsay. The County argues

---

**5.** The County relies on *Delaware State College v. Ricks*, 449 U.S. 250, 101 S.Ct. 498, 66 L.Ed.2d 431 (1980). *Ricks* held "that the limitations periods commenced to run when the tenure decision was made and Ricks was notified." 449 U.S. at 259, 101 S.Ct. at 504, 66 L.Ed.2d at 440. As we have held the decision to terminate Baber was made on March 15, 1988, *Ricks* is of no assistance to County.

the excluded testimony was elicited to prove Baber had notice of poor job performance. Testimony to show notice of a fact and not the fact itself is not hearsay. *See Player v. Thompson*, 259 S.C. 600, 193 S.E.2d 531 (1972) (testimony that inspector said in presence of defendants that tires were bald not hearsay when offered to prove notice of condition); *see also* 2 Kenneth S. Broun et al., McCormick on Evidence § 249 (4th ed.1992). Thus, the testimony should not have been excluded on the ground of hearsay. We, nevertheless, affirm the trial judge for the reasons set forth below.

■ Conduct of trial, including the admission and rejection of testimony, is largely within trial judge's sound discretion, the exercise of which will not be disturbed on appeal absent an abuse of that discretion or the commission of a legal error that results in prejudice for appellant. *South Carolina Dep't of Highways & Pub. Transp. v. Galbreath*, 315 S.C. 82, 431 S.E.2d 625 (Ct.App.1993).

■ The excluded testimony of attorney Parham was not proffered. Absent a proffer, it is impossible for this Court to determine the effect of the excluded testimony. *See Mains v. K Mart Corp.*, 297 S.C. 142, 375 S.E.2d 311 (Ct.App.1988)(attorney must move that jury be excused and proffer testimony objected to). On this record, the County has failed to show how it was prejudiced by the exclusion of Parham's testimony.

■ The testimony of Mary Turner, however, was proffered. Turner's proffer revealed she would have testified about a 1986 event involving Baber and Gale Crawford, a member of County Council. Turner proffered that Crawford gave Baber two weeks to present a certain audit. During the County's case in chief, Crawford testified at length on the same subject.

■ The evidence excluded by the trial judge during Baber's case in chief was presented during the County's case in chief. There is no error in excluding testimony which is subsequently admitted into evidence. *Smith v. Winningham*, 252 S.C. 462, 166 S.E.2d 825 (1969) (no error in sustaining objections to testimony when same testimony or testimony to same effect has been or is afterwards allowed to be given). We affirm.

## C. After-Acquired Evidence

■ The County introduced evidence acquired during discovery concerning the poor job Baber performed on the tax audit. This evidence did not form the basis for Baber's termination. The County introduced the evidence to show that even if it fired Baber for an improper reason, Baber's inadequate audit of the County Tax Auditor's office would have led the County to legitimately dismiss Baber. The County also introduced evidence to show the County Audit department ran much smoother after Baber was terminated.

The trial judge allowed the evidence to be entered at trial. However, the trial judge charged the jury as follows:

Any after-acquired evidence concerning an employee's performance, which you find was unknown to the public body at the time the public body terminated the employee, may not be considered by you in determining whether the public body discharged or terminated an employee for causes independent of those alleged by the employee, for our law says you must consider only those facts and circumstances known to the public body at the time of the employee's termination.

The County contends the trial judge erred in charging the jury not to consider after-acquired evidence. Under these facts, we find that the after-acquired evidence should not have been considered by the jury; however, we hold that such evidence may be considered in certain circumstances.

■ The federal circuits and various states have held divergent views as to the propriety of the use of after-acquired evidence in employment cases. Recently, the United States Supreme Court resolved the split in the federal circuits. *McKennon v. Nashville Banner Publishing Co.*, 513 U.S. 352, 115 S.Ct. 879, 130 L.Ed.2d 852 (1995). In *McKennon*, a unanimous Court concluded that as a general rule, in cases where after termination it is discovered that the employee has engaged in wrongdoing, neither reinstatement nor front pay is an appropriate remedy. The case set forth the following standard for determining whether after-acquired evidence may be used to limit employee damages:

Where an employer seeks to rely upon after-acquired evidence of wrongdoing, it must first establish that the wrong-

doing was of such severity that the employee in fact would have been terminated on those grounds alone if the employer had known of it at the time of the discharge.

*McKennon,* 513 U.S. at 362–63, 115 S.Ct. at 886–87, 130 L.Ed.2d at 864. We adopt this standard for the admissibility of after-acquired evidence of employee misconduct.

 The severity of the employee's misconduct required for termination will necessarily vary on a case by case basis. As with the reception of all evidence, whether the employer has made a prima facie case warranting the admission of after-acquired evidence of employee misconduct is in the first instance a question for the trial judge.

In the case at bar, the trial judge admitted after-acquired evidence of Baber's misconduct. This claimed misconduct consisted of poor job performance and testimony that the County Audit department ran smoother after Baber's termination. The trial judge then charged the jury that it would never be proper to consider the evidence acquired after Baber's termination in determining either liability or damages. We find that the judge reached the correct final result, but for the wrong reason. We hold that to admit evidence of employee misconduct acquired after the employee is terminated, "the wrongdoing [must be of] such severity that the employee in fact would have been terminated on those grounds alone if the employer had known of it at the time of the discharge." *See McKennon,* 513 U.S. at 362–63, 115 S.Ct. at 886–87, 130 L.Ed.2d at 864. Because after-acquired evidence of Baber's misconduct was relatively minor, and was not demonstrated to be of such severity that he in fact would have been terminated on those grounds alone if the employer had known of it at the time of discharge, then there was no error in failing to allowing the jury to consider the evidence. *See Anderson v. Elliott,* 228 S.C. 371, 90 S.E.2d 367 (1955) (to be reversible, error must be material and prejudicial).

## D. EMPLOYMENT-AT-WILL

 The County claims the trial judge erred in refusing to charge the doctrine of employment-at-will. We disagree.

The Whistleblower's Act, S.C.Code Ann. § 8–27–10 *et seq.* (1988), in effect at the time of this action, provided that there

is a presumption that an employee who is discharged "within one year after having exposed governmental criminality, corruption, waste, fraud, gross negligence, or mismanagement ... was wrongfully treated...." S.C.Code Ann. § 8–27–30 (1988). The employer may rebut the presumption as set forth above.

Under the Act in force at the time of Baber's termination, a plaintiff who has blown the whistle enjoys a presumption that the whistleblowing was the cause for the employee's discharge. The defendant may rebut the presumption by showing good cause as enumerated in the statute. The employment-at-will of the employee is irrelevant under section 8–27–30 (1988). The trial judge correctly refused to charge the jury on the doctrine of employment-at-will. We affirm.

### E. MANDAMUS ACTION

 The County claims the trial judge made findings of fact and conclusions of law unnecessary to his ruling on the mandamus action.

The trial court disposed of the mandamus claim in a separate proceeding. It found that penalties for late taxes had been waived by the Tax Collector and by County Council. The trial judge held that neither County Council nor the County Tax Collector had authority to waive penalty fees for late taxes. The trial judge, however, denied the mandamus because the plaintiff had not exhausted his administrative remedies with the South Carolina Tax Commission.

The County does not challenge the trial judge's holding that Baber must exhaust his administrative remedies before seeking a mandamus from the circuit court. Rather, County contends the trial judge found facts and made conclusions of law unnecessary to the decision. The County fears the Tax Commission will be bound by the circuit court's findings of facts and conclusions of law on the mandamus issue. The issue, however, has not been presented to the Tax Commission. Thus, the issue is not ripe for review by this Court. *See Park v. Safeco Ins. Co.*, 251 S.C. 410, 162 S.E.2d 709 (1968)(Courts generally decline to pronounce a declaration wherein the rights of a party are contingent upon the happen-

ing of some event which cannot be forecast and which may never take place.).

### F. PLAINTIFF'S APPEAL

At oral argument, Baber's counsel conceded that in the event the jury verdict was affirmed, Baber could not receive further relief. As we have affirmed the jury verdict in Baber's favor, the cross-appeal is now moot. *See Whiteside v. Cherokee County Sch. Dist. No. One,* 311 S.C. 335, 428 S.E.2d 886 (1993)(Court need not address remaining issue when disposition of prior issue is dispositive). Baber's cross-appeal is, therefore, **DISMISSED.**

Based upon the holding above, the orders under appeal are **AFFIRMED.**

FINNEY, Acting C.J., WALLER, J., and CURTIS G. SHAW and CHARLES W. WHETSTONE, Jr., Acting Associate Justices, concur.