**THIS OPINION HAS NO PRECEDENTIAL VALUE. IT SHOULD NOT BE CITED OR RELIED ON AS PRECEDENT IN ANY PROCEEDING EXCEPT AS PROVIDED BY RULE 268(d)(2), SCACR.**

**THE STATE OF SOUTH CAROLINA**
In The Court of Appeals

Paula E. Higgins, Respondent,

v.

Christopher M. Higgins, Appellant.

In Re: Steven C. Higgins

Appellate Case No. 2016-001265

———

Appeal From Cherokee County
Usha J. Bridges, Family Court Judge

———

Opinion No. 2019-UP-216
Submitted October 1, 2018 – Filed June 19, 2019

———

**AFFIRMED**

———

Kenneth Philip Shabel, of Kennedy & Brannon, P.A., and
W. Barry Bland, both of Spartanburg, for Appellant.

Hattie Darlene Evans Boyce, of Spartanburg, for
Respondent.

———

**SHORT, J.:** Christopher M. Higgins (Husband) appeals the family court's
decision to (1) order an amended Qualified Domestic Relations Order (QDRO) that

would require him to pay an additional $61,196.16 to Paula E. Higgins (Wife) over what he already paid pursuant to a prior QDRO that had been signed by the parties and approved by the family court and (2) hold him responsible for any legal fees incurred in the preparation of the amended QDRO. On appeal, Husband argues the family court (1) should have continued the contempt proceeding that resulted in the issuance of the appealed order because of the absence of a subpoenaed witness and (2) erred in ruling on the matter without taking any testimony during the hearing. We affirm.[1]

**FACTS AND PROCEDURAL HISTORY**

On August 8, 2014, the parties appeared before Family Court Judge Usha J. Bridges for a final divorce hearing. On September 16, 2014, Judge Bridges issued an order in which she granted Wife a divorce on the ground of a one-year separation and approved an agreement between the parties regarding their minor child and the division of the parties' marital debts and property.

Pursuant to the parties' agreement, Judge Bridges ordered the following regarding equitable distribution of the marital property:

> That [Wife] shall receive $182,500.00 from [Husband's] retirement account, and said amount shall constitute her entire equitable apportionment from his account. [Husband] shall retain any and all balances in his retirement/401k accounts over and above said $182,500.00 allocated to [Wife]. The division shall be done by way of a Qualified Domestic Relations Order (QDRO), with the parties each being responsible for 50% of the legal costs associated with the preparation of said QDRO.

On July 1, 2015, the parties appeared again before Judge Bridges on a motion filed by Wife for additional relief or a new trial. On July 24, 2015, the family court filed an order in which Judge Bridges ruled (1) Husband would pay for the preparation of two QDROs to be drafted by Attorney Richard H. Rhodes, (2) one QDRO would grant Wife $182,500.00 from Husband's Timken Company Savings and Investment Plan, and (3) another QDRO would be prepared granting Wife fifty

---

[1] We decide this case without oral argument pursuant to Rule 215, SCACR.

percent of the balance as of July 29, 2013, of Husband's Timken-Latrobe-MPB Torrington Retirement Plan.

On December 1, 2015, Judge Bridges signed a QDRO prepared by Attorney Richard H. Rhodes in conjunction with the matter, and the QDRO was filed the following day. This QDRO applied to the Timken Company Savings and Investment Plan. Paragraph 7 of the QDRO stated, "This Order assigns to [Wife] an amount equal to One Hundred Eight[y] Two Thousand Five Hundred and no/100 ($182,500.00) of [Husband's] Total Account Balance accumulated under the Plan as of July 29, 2013 (or the closest valuation date thereto.").

On March 18, 2016, Wife filed a petition for contempt against Husband alleging among other things that "[t]he manner in which the QDRO was prepared dropped the amount [Wife] was to receive to $121,303.84." Based on this allegation, Wife requested the family court to (1) find Husband in contempt; (2) require him to pay her $61,196.16, the difference between $182,500.00, the amount Wife claimed she should have received, and $121,303.84, the amount she actually received; and (3) order Husband to pay attorney's fees and costs she incurred in bringing contempt proceedings. The family court issued an order and rule to show cause directing Husband to appear on April 20, 2016. On April 13, 2016, Husband filed a return to the rule to show cause, in which he pointed out the QDRO specifically provided that Wife was to receive $182,500.00 and was approved by Wife as well as the family court.

Judge Bridges presided at the hearing on April 20, 2016, at which both parties were represented by counsel. When the hearing commenced, counsel for Husband informed Judge Bridges that he issued a subpoena for Rhodes to testify at the hearing but Rhodes had not yet arrived. Judge Bridges responded she was familiar with the case and stated she recalled Wife was supposed to have received $182,500.00 as a fixed amount. Counsel for Husband moved to continue the case, but Judge Bridges decided to wait for Rhodes to appear and suggested counsel make inquiries by phone as to Rhodes's whereabouts. Husband's counsel argued that requiring Husband to pay Wife more than what he had already paid was tantamount to an improper modification of the divorce decree, but provided no statements under oath as to why Rhodes's testimony was necessary.

While waiting for Rhodes's arrival, Judge Bridges asked to see documentation that supported Husband's assertion that Wife received $182,500.00, and counsel for Husband directed her to look at documents in a package that had apparently been submitted just before the hearing. The family court then showed counsel

documentation submitted by counsel for Wife that showed Wife received only $121,303.84.

Eventually, counsel for Husband informed Judge Bridges that Rhodes was calling her office. After a brief recess, Judge Bridges advised the parties on the record that she spoke with Rhodes by phone.[2] According to statements Judge Bridges made on the record, Rhodes advised her that some companies handle their QDROs by allocating a proportional share of the entire account to the alternate payee and revalue the share at the time of the distribution according to current market conditions. Judge Bridges also informed the parties Rhodes agreed to draft an amended QDRO that provided Wife's award was a sum certain that would not fluctuate over time. Judge Bridges then ruled the matter had concluded and she would not allow either party to put anything else on the record. Counsel for Husband objected to Judge Bridges's decision to rule on the matter without taking any testimony, but Judge Bridges overruled the objection and refused to change her ruling.

Judge Bridges signed the appealed order on May 3, 2016, and the family court filed the order on May 11, 2016. In the order, Judge Bridges ruled Rhodes would prepare an amended QDRO granting Wife $182,500.00, the amount granted to Wife in the original divorce decree, from Husband's Timken Company Savings and Investment Pension Plan. Judge Bridges further acknowledged she was ordering the amended QDRO over Husband's objection and ruled Husband would "continue to be responsible for any fees to Attorney Rhodes[,] whom he chose to do the QDRO." Judge Bridges, however, also expressly stated she did not find Husband in contempt, and the appealed order did not grant Wife any attorney's fees or costs incurred in conjunction with the contempt proceedings. This appeal followed.

## ISSUES

I.      Did the family court err in denying Husband's request to continue the matter because of the absence of a subpoenaed witness?

II.     Did the family court abuse its discretion in ruling on the matter without taking any testimony?

---

[2] Rhodes confirmed he received the subpoena but expressed concerns about attending the hearing because he represented both parties when he prepared the QDRO.

**LAW/ANALYSIS**

I.      Denial of Husband's Request for a Continuance

Husband argues Judge Bridges abused her discretion in denying his request for a continuance based Rhodes's absence from the hearing.  We disagree.

Husband argues he subpoenaed Rhodes, the attorney who prepared the QDRO, to testify at the hearing that Wife did in fact receive the amount to which she was entitled under the divorce decree.  Husband contends the absence of a subpoenaed witness was good cause for a continuance because Rhodes's testimony could have resolved the dispute as whether Husband complied with the obligation at issue.  We hold these circumstances do not warrant either a finding that Judge Bridges abused her discretion in denying Husband's request for a continuance or a reversal of that ruling.

"The grant or denial of a continuance is within the sound discretion of the trial judge and is reviewable on appeal only when an abuse of discretion appears from the record." *Plyer v. Burns*, 373 S.C. 637, 650, 647 S.E.2d 188, 195 (2007) (citing *Bridwell v. Bridwell*, 279 S.C. 111, 112, 302 S.E.2d 856, 858 (1983)).  "For appellate purposes, an abuse of discretion occurs where the ruling is based on an error of law or, where the ruling is grounded upon factual findings, is without evidentiary support." *Trotter v. Trane Coil Facility*, 393 S.C. 637, 645, 714 S.E.2d 289, 293 (2011).

Under Rule 40(i)(1), SCRCP, "[i]f good and sufficient cause for continuance is shown, the continuance *may* be granted by the court."  (emphasis added).  The use of the term "may" indicates Rule 40(i)(1) only allows a court to exercise discretion in deciding whether to grant or deny a request for a continuance once that party seeking postponement has made the required showing.  Demonstration of good and sufficient cause, without more, does not entitle a party to a continuance as a matter of right under Rule 40(i)(1).

We hold Judge Bridges acted within her discretion in denying Husband's motion to continue the matter.  First, we note Husband did not provide any statement under oath regarding Rhodes's anticipated testimony or produce the subpoena and proof of service.  Therefore, pursuant to Rule 40(i)(2), SCRCP, Judge Bridges could not have granted his motion for a continuance.[3]

---

[3] Rule 40(i)(2), SCRCP, reads in pertinent part as follows:

Second, as Wife argues in her brief, Judge Bridges, having presided at the divorce hearing and signed the divorce decree as well as a post-trial order, had firsthand knowledge regarding the amount that Wife was to receive from Husband's retirement account. During the proceeding, Judge Bridges showed counsel for Husband a document Wife submitted indicating the amount she received from Husband's retirement account was far less than the $182,500.00 awarded to her in the divorce decree. Husband has not challenged either the authenticity of the document or the accuracy of its information. Although Husband attempted at one point to argue the discrepancy between what Wife was awarded and what she received resulted from market fluctuations, the divorce decree clearly provided that Wife would receive $182,500.00 from Husband's retirement account and that amount would "constitute her entire equitable apportionment from his account." Under these circumstances, we hold Judge Bridges acted within her discretion in denying Husband's motion to continue the proceedings. *See M&M Grp., Inc. v. Holmes*, 379 S.C. 468, 474-75, 666 S.E.2d 262, 265 (Ct. App. 2008) ("The grant or denial of a continuance lies with the sound discretion of the trial court and such ruling will not be reversed absent a clear showing of abuse of discretion.").

II.     Husband's Right to a Testimonial and Evidentiary Hearing

Husband argues Judge Bridges abused her discretion by denying him a testimonial and evidentiary hearing. In support of this argument, Husband points out the

> No motion for continuance of trial shall be granted on account of the absence of a witness without the oath of the party, his counsel or agent, to the following effect, to wit: That the testimony of the witness is material to the support of the action or defense of the party moving; that the motion is not intended for delay; but is made solely because the party cannot go safely to trial without such testimony; that there has been due diligence to procure the testimony of the witness or of such other circumstances as will satisfy the court that the motion is not intended for delay. In all such cases where a subpoena has been issued, the original shall be produced, with proof of service . . . . A party applying for such postponement on account of the absence of a witness shall set forth under oath in addition to the foregoing matters what fact or facts he believes the witness if present would testify to, and the grounds for such belief.

hearing was scheduled pursuant to Wife's petition to have him found in contempt of court and he was therefore entitled under Rule 14(g), SCRFC, to "an evidentiary hearing with testimony pursuant to the Rules of Evidence." Husband further complains that the full conversation between Rhodes and Judge Bridges was not on the record and asserts the parties disagreed about the amount of money Wife actually received. We hold these arguments are unavailing.

"Conduct of trial, including the admission and rejection of testimony, is largely within the trial judge's sound discretion, the exercise of which will not be disturbed on appeal absent an abuse of that discretion or the commission of a legal error that results in prejudice for appellant." *Baber v. Greenville Cty.*, 327 S.C. 31, 41, 488 S.E.2d 314, 319 (1997).

The dissent argues Husband was prejudiced by the family court's amendment of the QDRO without an evidentiary hearing with testimony. Rule 14(g), SCRFC, states a contempt hearing in the family court "shall be an evidentiary hearing with testimony pursuant to the Rules of Evidence, except as modified by the Family Court Rules." However, even if Husband did not receive an evidentiary hearing with testimony, Husband was not prejudiced by the abuse of discretion or legal error. This hearing was not a retrial of the divorce action. The question before the court was whether or not Husband was in contempt of the original QDRO. Because Husband was ultimately not found in contempt, he cannot claim prejudice from a violation of Rule 14(g). *See Visual Graphics Leasing Corp. v. Lucia*, 311 S.C. 484, 489, 429 S.E.2d 839, 841 (Ct. App. 1993) ("An error is not reversible unless it is material and prejudicial to the substantial rights of the appellant."). The amount Husband owed under the order was not changed by the clarification in the wording. The family court also excused Husband's past failure to pay the full amount. Even though Husband wished to use the contempt hearing as a way to re-litigate his case and avoid paying the full amount, Husband was not prejudiced by the family court's refusal to use the contempt hearing in this manner. Absent prejudice to appellant, this court cannot reverse the lower court for failing to conduct an evidentiary hearing with testimony.

## CONCLUSION

Based on the foregoing, we affirm the appealed order.

**AFFIRMED.**

**HUFF, J., concurs.**

**WILLIAMS, J., dissenting.**

**WILLIAMS, J.:**  I respectfully dissent and I would reverse the family court's decision to rule on Wife's contempt petition without holding an evidentiary hearing with testimony pursuant to the Rules of Evidence.

The family court scheduled a contempt hearing as a result of Wife's contempt petition filed March 18, 2016.  At the hearing on April 20, 2016, the family court heard arguments from each party before taking a short recess.  During the recess, the family court had a phone conversation with Rhodes—who was not present for the hearing despite being under subpoena to testify.  As the majority explained, the family court came back on the record from this recess, informed the parties that Rhodes would draft an amended QDRO, ruled the matter had concluded, and would not allow either party to place anything else on the record.

Rule 14(g), SCRFC states a "contempt hearing shall be an evidentiary hearing with testimony pursuant to the Rules of Evidence . . . ."  "A [family] court's determination regarding contempt is subject to reversal whe[n] it is based on findings that are without evidentiary support or whe[n] there has been an abuse of discretion."  *Henderson v. Puckett*, 316 S.C. 171, 173, 447 S.E.2d 871, 872 (Ct. App. 1994); *see also Means v. Means*, 277 S.C. 428, 431, 288 S.E.2d 811, 812–13 (1982); *Bearden v. Bearden*, 272 S.C. 378, 381–82, 252 S.E.2d 128, 130 (1979).  I would reverse the family court's decision to rule on Wife's petition without allowing the parties to present any testimony or other evidence during the contempt proceeding.

The majority asserts that because Husband was not found in contempt, he suffered no prejudice from the family court's decision; therefore, it finds any error by the family court in this ruling is not reversible.  The prejudice results from the family court's decision to order Rhodes to draft an amended QDRO for the parties based on an off-the-record phone conversation the family court had with Rhodes during a recess outside the parties' presence.  The family court's written order provides no guidance as to the basis on which it decided to order an amended QDRO.

For the foregoing reasons, I respectfully dissent and I would reverse and remand this case to the family court.