**THIS OPINION HAS NO PRECEDENTIAL VALUE. IT SHOULD NOT BE CITED OR RELIED ON AS PRECEDENT IN ANY PROCEEDING EXCEPT AS PROVIDED BY RULE 268(d)(2), SCACR.**

**THE STATE OF SOUTH CAROLINA
In The Court of Appeals**

Malcolm E. Livingston, Jr. as the Personal Representative of the Estate of Rebecca E. Livingston and personally, Respondent,

v.

The Regional Medical Center of Orangeburg and Calhoun Counties, Appellant.

Appellate Case No. 2022-000809

———————

Appeal From Orangeburg County
Edgar W. Dickson, Circuit Court Judge,

———————

Unpublished Opinion No. 2024-UP-311
Heard April 10, 2024 – Filed September 11, 2024

———————

**REVERSED AND REMANDED**

———————

Michael C. Tanner, of Michael C. Tanner, LLC, of Bamberg, and Morgan Rebekkah Long, of Michael Tanner, LLC, of Trenton, NC, both for Appellant.

Marion Clyde Fairey, Jr., of The Fairey Law Firm, LLC, of Hampton, and Clyde C. Dean, Jr., of Dean Law Firm, PLLC, of Orangeburg, both for Respondent.

———————

**PER CURIAM:**  In this medical malpractice appeal, The Regional Medical Center of Orangeburg and Calhoun Counties (Regional Medical) argues the circuit court erred in (1) granting Malcolm E. Livingston, Jr.'s (Husband) motion for partial summary judgment as to whether a supervising physician is vicariously liable for the negligent acts of a physician's assistant under the South Carolina Physician Assistants Practice Act (the PA Act)[1] and (2) finding the higher physician liability cap of the South Carolina Tort Claims Act (the TCA)[2] applies.  As the question of the applicable liability cap is not yet ripe for review, we reverse and remand.

**Facts and Procedural History**

On August 12, 2016, seventy-two-year-old Rebecca Livingston was involved in an automobile accident and transported to the Emergency Department (ER) at Regional Medical.  Although there was a licensed physician present in the ER that day, physician's assistant Michael Carothers managed Livingston's care.  Carothers discharged Livingston after evaluating and treating her.

In the early morning hours of August 13, 2016, Livingston returned to the Regional Medical ER because she could not move her legs.  A licensed physician found Livingston was suffering from a spinal hematoma and had her transported to the nearest Level I Trauma Center.  By the time she arrived, Livingston had lost all sensation below her T-8 vertebra.  She was later diagnosed with paraplegia, secondary to spinal cord injury.  Twenty months later, Livingston died due to complications related to her paraplegia.

Husband brought wrongful death, survival, and loss of consortium actions against Regional Medical, alleging Regional Medical's failure to diagnose and timely treat Livingston's spinal hematoma caused her paralysis and led to her death.

Regional Medical denied Husband's allegations and asserted its employees acted within the applicable standard of care in treating Livingston.  As an affirmative defense, Regional Medical noted its status as a governmental entity entitled to all protection afforded by the Tort Claims Act.  Specifically, Regional Medical claimed that because Livingston's care was provided solely by a licensed PA, rather than a licensed physician, the TCA capped its liability at $300,000/600,000.

---

[1] S.C. Code Ann. §§ 40-47-905 to -1020 (2013).

[2] S.C. Code Ann. §§ 15-78-10 to -220 (2005 & Supp. 2023).

Husband moved for partial summary judgment, asserting Regional Medical could not avoid the higher physician liability cap simply because it chose to staff its ER with a PA who managed Livingston's care. As part of this argument, Husband asserted a supervising physician is vicariously liable for the negligent acts of a PA.

Following a hearing, the circuit court granted partial summary judgment, finding:

> The [PA] Act clearly and unambiguously establishes an agency relationship between a supervising physician and a physician's assistant. A physician assistant cannot practice unless a supervising physician has accepted responsibility for the medical services rendered by the physician assistant. Where an agency relationship exists, the principal is independently responsible for the acts and omissions of the agent. Accordingly, [Regional Medical's] supervising physician on duty on August 12, 2016 is responsible for the medical care Ms. Livingston received and [Regional Medical] cannot reduce its liability cap by claiming that the acts and omissions that injured Ms. Livingston were conducted by a physician's assistant rather than a licensed physician. The very authority that permits a physician assistant to practice in [Regional Medical's] emergency room requires that he or she only do so as the agent of a supervising physician who [has] accepted responsibility for the medical services rendered. Because the supervising physician is liable for the acts and omissions committed by his agent, under the plain terms of the TCA, the $1,200,000.00 liability cap is applicable to this case.

The circuit court's denied Regional Medical's Rule 59(e), SCRCP, motion, and Regional Medical timely appealed.

**Analysis**

Regional Medical argues the circuit court erroneously granted partial summary judgment because genuine issues of material fact remain regarding the applicable standard of care, whether the supervisory attending physician must be present in the emergency department, and whether Regional Medical breached the standard of care. Husband contends the circuit court properly rejected Regional Medical's

argument because it conflates the facts necessary to establish liability at trial with the material facts necessary to resolve the legal question of vicarious liability under the PA Act.

"Rule 56(c) of the South Carolina Rules of Civil Procedure provides that the moving party is entitled to summary judgment 'if the [evidence before the court] show[s] that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law.'" *Kitchen Planners, LLC v. Friedman*, 440 S.C. 456, 459, 892 S.E.2d 297, 297 (2023) (alterations by the court) (quoting Rule 56(c), SCRCP). "When determining if any triable issues of fact exist, the evidence and all reasonable inferences must be viewed in the light most favorable to the non-moving party." *Callawassie Island Member Club, Inc. v. Martin*, 437 S.C. 148, 157, 877 S.E.2d 341, 345 (2022).

The parties presented competing experts to address the application of the PA Act and other issues in this case. With respect to the question of the applicable liability cap, Regional Medical asserts Husband has offered no evidence of a physician/patient relationship and notes it is undisputed that the only provider who saw Livingston was a PA. In response, Husband properly counters that the circuit court's finding that PA Carothers was an agent of the supervising physician is based on the plain language of the PA Act itself. *See* S.C. Code Ann. § 40-47-935(D) ("A PA is an agent of his supervising physician in the performance of all practice-related activities, including, but not limited to, the ordering of diagnostic, therapeutic, and other medical services."); § 40-47-955(A) ("The supervising physician is responsible for all aspects of the physician assistant's practice. Supervision must be continuous but must not be construed as necessarily requiring the physical presence of the supervising physician at the time and place where the services are rendered, except as otherwise required for limited licensees. The supervising physician shall identify the physician assistant's scope of practice and determine the delegation of medical acts, tasks, or functions. Medical acts, tasks, or functions must be defined in written scope of practice guidelines which must be appropriate to the physician assistant's ability and knowledge.").

the TCA's higher physician liability cap applies to any PA liability. But the need

malpractice caps and the agency language of the PA Act) is "contingent upon the happening" of an event that may or may not occur. *See Eagle Container Co., LLC v. County of Newberry*, 366 S.C. 611, 634, 622 S.E.2d 733, 745 (Ct. App. 2005), *rev'd on other grounds*, 379 S.C. 564, 666 S.E.2d 892 (2008). Accordingly, we find this question is not yet ripe for review.

South Carolina case law addressing ripeness *sua sponte* is sparse, but this court explained in *Eagle Container* that:

> [R]ipeness considerations may be and should be raised *sua sponte*. Both South Carolina and Federal case law support this ruling. In *Baber v. Greenville County*, the rule is articulated that courts generally decline to pronounce a declaration wherein the rights of a party are contingent upon the happening of some event which cannot be forecast and which may never take place. 327 S.C. 31, 44, 488 S.E.2d 314, 321 (1997) (citing *Park v. Safeco Ins. Co.*, 251 S.C. 410, 162 S.E.2d 709 (1968)).

*Id.*[3]

As the question of the applicable liability cap remains contingent upon the return of a verdict exceeding the Tort Claims Act's $300,000/600,000 liability caps, we reverse the circuit court's order granting partial summary judgment and remand this matter to the circuit court.

**REVERSED AND REMANDED.**

**THOMAS and MCDONALD, JJ., and VERDIN, A.J., concur.**

---

[3] Because the court of appeals found a justiciable controversy existed, there was "no ripeness issue" in *Eagle Container*. *See id.*